THE STATE
*v.*
COOPER.

THE STATE OF CONNECTICUT *against* JARED COOPER.

MOTION for a new trial.

*A.* in the name of *B.,* falsely and fraudulently, made and published a writing in the following words, *viz.* " Messrs. *Doolittle* and *Dickerman,* please to let the bearer

This was an information brought upon the statute, for *forgery.* It was alleged, that the prisoner, to prevent equity and justice, wilfully and feloniously, made, forged and published a certain false and forged order or writing, purporting to be a genuine order or writing of one *Elias Hotchkiss,* upon *Jared Doolittle* and *Jason Dickerman,* by the name of *Doolittle* and *Dickerman,* knowing the same to be false and forged. The information contained two counts; in one of which

trade ten dollars out of your store, and oblige yours," &c. Held, that such acts of *A.* constitute the crime of *forgery,* within the meaning of the statute, *tit.* 66, *cap.* 3, *sec.* 1.

the prisoner was charged with having made and forged the order ; in the other, with having published it. It was also alleged, that at the time of making and publishing the order, *Hotchkiss* had a credit with *Doolittle* and *Dickerman*, and was authorised to draw on them, for an amount exceeding the sum expressed in the order ; and that the prisoner had knowledge of this fact. The order or writing recited in the information, was of the tenor following, *viz.* " Messrs. *Doolittle* and *Dickerman*, please to let the bearer trade ten dollars at your store, and oblige yours,

*Elias Hotchkiss.*"

The prisoner was found *guilty* by the verdict of the jury.

On the trial, it was contended, in behalf of the prisoner, that although the facts alleged in the information should be found to be true, yet, that he was not guilty of the crime of *forgery*, within the meaning of the statute ; and that the jury ought to find a verdict of *not guilty.* But the court, in their charge, instructed the jury, that if the prisoner made the order, and put it off to *Doolittle* and *Dickerman*, as stated in the information, he was guilty of the crime of *forgery*, within the meaning of the statute, and that they ought to return their verdict accordingly ; although, it should appear, that *Hotchkiss*, at the time of making and publishing the order, had no authority to draw on *Doolittle* and *Dickerman*, for the amount thereof, by reason of any previous agreement for that purpose. The prisoner moved for a new trial, on the ground of a misdirection ; which motion was reserved for the consideration and advice of the nine Judges.

*N. Smith* and *Bristol*, in favour of the motion. We contend, in the first place, that the acts charged in the information, do not constitute the crime of *forgery*, within the meaning of our statute. In the enactment of penal laws, it is the duty of the legislature to define the offence with the utmost certainty. Nothing should be left for construction In the statute, upon which the present prosecution is founded, certain writings and instruments are specified, the forging of which, is made punishable ; but an " order" is not specifically mentioned. The words of the statute are, after specifying

what species of writings or instruments may be the subjects of forgery, " or any other writing of any person or persons whatsoever, to prevent equity and justice." This clause of the statute is void, for uncertainty, and cannot be extended so as to comprehend any other kind of writings or instruments, than such as are mentioned in the preceding clause. Our objection does not rest on the ground, that the legislature had no meaning when they used these general expressions ; but that their meaning does not extend to this case, and that the words used are only illustrative of the preceding clause of the statute. If the prisoner be lawfully convicted, it must be by virtue of the provisions contained in the sweeping clause of the statute. This cannot be done. Such general provisions are altogether inoperative, and will be rejected as superfluous. 1 *Black. Com.* 88. 1 *Swift's Syst.* 50.

Besides, it has been held, both in this country, and in *England,* that a writing of the description mentioned in the information, is not an "order" in the legal acceptation of the term. *The People* v. *Thompson,* 2 *Johns. Ca.* 342. *Mary Mitchell's* case, *Foster's C. L.* 119. *Rex* v. *Williams, Leach's Ca.* 118. *Ellor's* case, *Leach's Ca.* 299. *Lockett's* case, *Leach's Ca.* 93. in nota.

2. This prosecution cannot be sustained upon the principles of the common law. Forgery, at common law, is defined to be, " the fraudulent making or alteration of a writing, to the prejudice of another man's right." 4 *Black. Com.* 247. *Hotchkiss* had no effects or funds in the hands of *Doolittle* and *Dickerman,* and had no authority to draw on them. The writing, to constitute forgery, must be such, that if it were genuine, it would impose an obligation upon the maker. Upon this principle, if the writing in question, had been genuine, *Hotchkiss* could not have been made liable to *Cooper,* and *Doolittle* and *Dickerman* could not be subjected to any of the parties, because they were not bound to accept the order, and might lawfully refuse so to do. Nothing, therefore, that *Doolittle* and *Dickerman* could do, or refuse to do, could affect the rights of the parties. As well, may it be

pretended, that it is forgery, to forge a letter, or a certificate that such a man is *deaf* and *dumb*, or a certificate of character. This will never be seriously claimed. We think, therefore, that the direction of the court was wrong, and that a new trial ought to be granted.

*Dagget*, contra.

1. The acts charged in the information, clearly constitute the crime of forgery. The writing comes within the meaning of the general clause of the statute. It regards the right of property. Property is the subject matter. The just and equitable rights of another, are, or may be, affected by it. If the writing had been genuine, and had been accepted by *Doolittle* and *Dickerman*, *Hotchkiss* would most unquestionably have been liable to them, for the amount expressed in it. No one will deny, that this order was a writing; and it is equally certain, that it was calculated to prevent equity and justice. This writing was as prejudicial to the rights of other persons, as if it had been a letter of attorney, or any other writing mentioned in the statute. The instances to be found in the books, where a construction has been given to general expressions in a penal statute, do not correspond with the present case. In such instances, the objections have arisen from an attempt to include things of different species, under the same specific term. For instance ; by the statute 14 *Geo.* II. c. 6., the stealing of sheep *or other cattle*, was made felony without benefit of clergy ; but it was thought, that the words, " or other cattle," were too loose and general, including a great number of species ; and the act was held to extend to sheep only. 1 *Black. Com.* 88. But this general clause in our statute, is very different. Nothing conveys a more certain and definite idea, than the words, " or other writing to prevent equity and justice."

But besides, the construction here contended for, has been sanctioned by frequent decisions in the Superior Court. Many persons have been sentenced to Newgate, for forging just such a writing as the one set forth in the information.

2. The making and publishing of the order or writing, recited in the information, constitutes forgery at common law.

And although the court charged the jury, that the facts alleged amounted to forgery, within the meaning of the statute, yet, if the facts found would have constituted forgery, at common law, the court will not grant a new trial. According to modern decisions, whoever forges an instrument which is prejudicial to another, in his pecuniary interest, is guilty of forgery, at common law. *East's C. L.* 861. *Rex* v. *Ward*, 2 *Ld. Raym.* 1461.

SWIFT, J. This was an information for forgery, and uttering a false order, as true, knowing it to be false.

The court charged the jury, that if they found the prisoner made and passed the order, it was forgery ; though *Hotchkiss,* in whose name the order was drawn, had no authority to make such order. For this direction of the court, a new trial is moved for.

It is contended, that the words in the statute, on which this prosecution is founded, *viz.* " or other writing to prevent equity and justice," are so uncertain, that they ought to be rejected ; and as an *order* is not comprehended under the writings enumerated in the statute, this prosecution cannot be maintained. It is a sound principle, that laws for the punishment of crimes, should be so explicit and certain, that no man may do an act for which he may be punished, without knowing that such act is prohibited. But as it would be impossible to specify every act which is criminal, and ought to be punished, it is necessary that the legislature should make use of general terms, in designating crimes.

In the present case, it was difficult for the legislature to enumerate every thing which may be the subject of forgery. After mentioning those which were in common use, they add the general clause, " or any other writing to prevent equity and justice." If this description be uncertain, it ought to be rejected. If it be uncertain whether an order comes within this description, this prosecution ought not to be sustained. But I apprehend, it would be difficult to imagine a clearer description of an offence. To forge a writing with a view to defraud another, or to violate his rights of property, is to

forge a writing, to prevent equity and justice. To draw an order in the name of another, without his authority, is to forge a writing by which he may be defrauded, and his rights violated. It is clear, then, that an order comes not only within the description, but the intent and meaning of the statute : and such has been the construction, sanctioned and confirmed by the immemorial, constant and uniform usage and practice of our courts.

There are many cases where the language of the law is as general as in the present instance. Take the case of theft. The common law definition of theft is, *the feloniously taking and carrying away the personal goods of another, with intent to steal.* To decide what acts come within this definition, is frequently much more difficult, and gives a much greater latitude of construction, than to ascertain what writings are comprehended under the clause, " other writing to prevent equity and justice."

As to the case relied upon, where, in a prosecution on a statute against stealing sheep *and other cattle,* the court rejected the words, " other cattle." This was on the ground, that the word *cattle* was of uncertain import, and not because it was a general description, after the enumeration of particular things : but as there is no such ambiguity in this statute, the reason of that case does not apply.

It has been objected, that it does not appear, that *Hotchkiss,* in whose name the order was drawn, had a right to draw on *Doolittle* and *Dickerman ;* but this is an attempt to make a distinction without a difference. If *Hotchkiss* had a right to draw, he could have created no liability by the order, unless it was accepted. If he had no right to draw, yet if the order was accepted, he became liable in the same manner as if he had a right : Of course, his right to draw, or not, was perfectly immaterial.

I am therefore of opinion, that a new trial ought not to be granted.

In this opinion, the other Judges severally concurred.

New trial not to be granted.